Filed 6/17/13  In re Audrey B. CA3

**NOT TO BE PUBLISHED**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| In re AUDREY B. et al., Persons Coming Under the Juvenile Court Law. | C072590 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.B.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. J232634, J232635, J232636) |

Appellant S.B., father of the minors Audrey B., K.B., and Ki.B., appeals from an order of the juvenile court denying him reunification services.  (Welf. & Inst. Code, §§ 361.5, subd. (e)(1) (hereafter section 361.5(e)(1)), 395.) [1]  Father contends there is insufficient evidence to support the juvenile court's finding that providing services to him would be detrimental to the minors.  We shall affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On August 23, 2012, the minors were placed into protective custody following referrals from mandated reporters that mother had sustained second degree burns over her face and body as a result of injuries inflicted by father, and 12-year-old Ki.B. reported that her mother's uncle took her from school, put a knife to her throat, sexually molested her, and made her strip in front of several men.

Interviewed by law enforcement that day, Ki.B. said that her mother's uncle had "been messing with and raping her for so long." The abuse had been going on for a couple of years and mother knew about it. Father called the police when he found out about the assault. Ki.B. also told the police that her mother's uncle had been doing the same things to mother since the child was six or seven years old. According to Ki.B., father has done nothing wrong and is the only one trying to protect them.

Regarding the burning incident, Ki.B. said she was alone with father and mother that night, as her sisters were staying with family members. She was sleeping in the garage with father, and when they woke up, mother was burned. She did not know how it happened.

Seven-year-old K.B. told a social worker that a bully, her mother's uncle, keeps coming to her house at night and messing with mother. Her mother's uncle is responsible for the scratches on mother's face as well as her burns. Every time she comes home from school her mother has a different bruise or something is wrong with her face; father tells her that her mother's uncle came home and beat mother up. K.B. has never seen her mother's uncle hurt her mother, but when she comes home from school her mother looks different. She has never seen her mother's uncle, but he keeps putting knives, guns, and other things in the home to get father in trouble.

2

According to K.B., mother and father argue with each other. She has seen father hit mother about four or five times. She told the social worker, " 'When mom lies, dad hits her and she tells the truth.' "

Three-year-old Audrey B. presented as very intelligent and was able to answer the social worker's questions. Mother and father fight " 'two times, three times, four times. He uses his hands.' " She has seen mother bleeding and then go to the hospital. Her mother's uncle also came to the house and fought mother, scratching and fighting with his hands. Asked who burned mother, Audrey B. replied, " 'My dad did it.' "

Mother was interviewed the day after the minors were placed in protective custody. Ki.B. was not telling the truth when she said she had been abducted from school. Father made the minors paranoid about their mother's uncle.

On August 18, 2012, mother and the minors were asleep on the couch while father slept in the bedroom. Father awakened and told mother he had a vision that her uncle was on the edge of the bed. Father kept questioning mother, wanting to know if she had opened the door for him. He accused mother of drugging him and she agreed. Father then boiled water and threw it on her as she came in from the back porch. Father would not allow mother to call for help; her injuries were finally discovered and reported by father's probation officer several days after the incident. Prior to the probation officer entering the home, father told the family they had to get the story straight and say that their mother's uncle inflicted the injuries.

When questioned by law enforcement, father said that Ki.B. threw the water on mother as they were arguing about text messages from mother's uncle. The investigating officer thought that father had split personalities, manifesting as himself and his wife's uncle during the interview.

3

Mother told the social worker that she had been with father for 15 years. Things went well after they went through family maintenance following a domestic violence incident in 2008. Another incident happened in 2011; mother called law enforcement and father was arrested for violating his probation. She stayed in the relationship with father out of fear.

Medical records revealed that mother sustained burns to her head, face, chest, and right flank, some of which were second degree burns. She also sustained additional burns, intracranial hemorrhage, closed head injury/concussion, facial fracture, facial contusions, rib fracture, collapsed lung, intra-abdominal injury, and contusions on her extremities. Mother, who tested positive for amphetamines, said she was repeatedly forced to smoke methamphetamine and crack against her will.

On August 27, 2012, the Sacramento County Department of Health and Human Services (DHHS) filed dependency petitions, alleging jurisdiction based on the parents' failure to protect the minors from domestic violence from father against mother. The juvenile court ordered the minors detained the following day.

The family had a history of domestic violence. In July 2008, father stabbed mother with a knife, causing her to be taken to the hospital. He also threatened her with a gun in front of the children. The minors were afraid of father because he hit mother. The allegations were sustained and the family participated in family maintenance services. Father attended anger management classes, and was compliant with his probation. The case was closed in March 2009 after the family met their case plan objective.

In September 2011, after accusing mother of lying to him about being with other men, father put both hands around her neck and pushed her back as well as kneeing her in the crotch. Father was subsequently convicted of felony corporal injury to a spouse or cohabitant. (Pen. Code, § 273.5, subd. (a).)

4

The minors were interviewed again in September 2012, but declined to provide any additional information regarding the incident. All three minors requested visits with father during his incarceration. They did not display any emotional or behavioral problems.

Following the recent incident of domestic violence, father was arrested and charged with two counts of corporal injury to a spouse or cohabitant and single charges of aggravated mayhem (Pen. Code, § 205) and torture (*id*., § 206). According to the DHHS report, bail was set at $1,000,000 for one charge and no bail for the remaining three charges. He was incarcerated at the Sacramento County New Main Jail at the time of the jurisdictional/dispositional hearing. No reunification services for father were available at the jail.

No witnesses were presented at the October 2012 jurisdictional/dispositional hearing. Counsel for father and the minors' counsel objected to DHHS's recommendation to bypass services for father pursuant to section 361.5(e)(1). The juvenile court sustained the petitions, ordered services for mother and bypassed services for father under section 361.5(e)(1). In support of its ruling, the juvenile court found that father probably would be convicted of the charges and serve a substantial sentence. The juvenile court also relied on the history of domestic violence, including father's prior felony domestic violence conviction stemming from an attack on mother, and father's failure to take responsibility for his actions by blaming Ki.B. for the assault. Finally, the juvenile court found that the domestic violence led to serious mental health issues.

## DISCUSSION

Father contends the juvenile court erred in bypassing reunification services for him pursuant to section 361.5(e)(1).

5

Section 361.5(e)(1) provides, in pertinent part: "If the parent or guardian is incarcerated, institutionalized, or detained by the United States Department of Homeland Security, or has been deported to his or her country of origin, the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child. In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the length and nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered and, for children 10 years of age or older, the child's attitude toward the implementation of family reunification services, the likelihood of the parent's discharge from incarceration, . . . within the reunification time limitations described in subdivision (a), and any other appropriate factors. . . . Reunification services are subject to the applicable time limitations imposed in subdivision (a)."

We review a juvenile court's denial of reunification services for substantial evidence. (*In re Brian M.* (2000) 82 Cal.App.4th 1398, 1401.) "In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible. Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact." (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547.)

Father notes the minors lived their entire lives with him. He also attacks the reasoning behind the juvenile court's decision. In bypassing services, the juvenile court said father had not yet been convicted of the charges, but it "presumes that he will

6

probably be convicted" and therefore serve "a substantial sentence." Father deems the juvenile court's rationale "speculation" that "was not an appropriate basis for denying reunification between the children and their father." Finally, he finds the juvenile court's rulings regarding harm to the children to be contradicted by DHHS's reports that they had no emotional or behavioral problems.

Father's attempts to overturn the juvenile court's decision by attacking its reasons for denying services are misplaced. "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.) This rule applies equally to dependency cases. (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876.) So long as the record contains substantial evidence supporting the denial of services, the correctness of the juvenile court's reasons for the denial is irrelevant.

Father has a history of domestic violence with mother, which includes a felony domestic violence conviction. He was to remain incarcerated during the pendency of the criminal charges stemming from the incident that led to the dependency, and faced a substantial prison term if convicted.[2] Father was also unlikely to benefit from services; his previous completion of anger management did not prevent the current incident, and he tried to blame his eldest daughter for the attack.

Finally, the juvenile court could reasonably find that father's behavior placed the minors in considerable danger. Medical evidence shows that mother was the victim of repeated, severe attacks. While mother indicated father was the aggressor, the minors'

---

[2] The crime of aggravated mayhem is punishable by life in prison with the possibility of parole (Pen. Code, § 205), as is torture (*id.*, §§ 206, 206.1).

accounts were confused, some indicating father was responsible for at least some of the attacks, with other accounts placing all or at least some of the blame on their mother's uncle. However, mother indicated that her uncle was blameless, and the investigating police officer thought that mother's uncle was a manifestation of father's personality. The minors' stories about mother's uncle, particularly Ki.B.'s claims regarding molestation, are evidence of significant emotional harm if the purported incidents were not carried out by this person but were merely a figment of their or defendant's imagination or fabrication.[3]

In short, father is likely to be incarcerated for most or all of the minors' dependency in a facility without provisions for reunification services, is unlikely to benefit from services, and engaged in behavior that at least carried a real risk of doing serious emotional harm to the minors. This provided substantial evidence to support a finding that services for father would be detrimental to the minors.

## DISPOSITION

The orders of the juvenile court denying reunification services to father are affirmed.

                                                    BUTZ          , J.

We concur:

            BLEASE        , Acting P. J.

            MAURO        , J.

---

[3] We also note the dispositional orders included individual counseling for the minors.